1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CHOR LAO,                                No.  2:22-cv-02017-CKD

12              Plaintiff,

13        v.                                   ORDER

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                Defendant.
16

17

18          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying an application for Disability Income Benefits ("DIB") under Title II

20   of the Social Security Act ("Act").  The parties have consented to Magistrate Judge jurisdiction to

21   conduct all proceedings in the case, including the entry of final judgment.  For the reasons

22   discussed below, the court will deny plaintiff's motion for summary judgment and grant the

23   Commissioner's cross-motion for summary judgment.

24   BACKGROUND

25          Plaintiff, born in 1958, applied in July 2014 for DIB, alleging disability beginning

26   February 17, 2014.  Administrative Transcript ("AT") 435, 525.  Plaintiff alleged he was unable

27   to work due to right ankle, right foot, and back pain, as well as gout.  AT 53, 525.  In 2016, the

28   ALJ issued an unfavorable decision, finding plaintiff non-disabled.  AT 26-35.  Plaintiff appealed

the decision, and the court remanded the matter for further proceedings, including a second administrative hearing held in September 2019.  AT 466-492, 524-534.  In a new decision dated November 19, 2019, the ALJ again determined that plaintiff was not disabled.[1]  AT 428-436. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2015.
>
> 2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of February 17, 2014 through his date last insured of June 30, 2015.
>
> 3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease.

---

[1]     Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work? If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

    The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

4.   Through the date last insured, the claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.   After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work, except he can occasionally stoop, kneel, crouch, crawl, and climb stairs; he cannot operate a motor vehicle; and he must avoid hazards such as unprotected heights and dangerous moving machinery.

6.   The claimant was capable of performing past relevant work as a microcomputer support specialist through the date last insured.

7.   Although the claimant was capable of performing past relevant work through the date last insured, there were other jobs existing in the national economy that he was also able to perform.  Therefore the Administrative Law Judge makes the following alternative findings for step five of the sequential evaluation process.[2]

8.   The claimant was not under a disability, as defined in the Social Security Act, at any time from February 17, 2014, the alleged onset date, through June 30, 2015, the date last insured.

AT 430-436.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled:  (1) the ALJ erred in finding that plaintiff could perform past relevant work as a microcomputer support specialist; (2) the RFC should have included mental limitations based on depression; (3) the ALJ erred in evaluating the medical opinions; (4) the ALJ erred in discounting plaintiff's subjective symptom testimony; and (5) the ALJ erred in applying the Medical Vocational Guidelines to find plaintiff not disabled.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial

---

[2] The ALJ found that the claimant was born in 1958 and was 56 years old; he was not able to communicate in English; and, given his age, education, work experience, and residual functional capacity (RFC), he could perform medium-exertion jobs such as hand packager and laundry worker.  AT 435-436.

1   evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340

2   F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

3   mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th

4   Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is

5   responsible for determining credibility, resolving conflicts in medical testimony, and resolving

6   ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

7   "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

8   rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

9        The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th

10  Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's

11  conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not

12  affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see

13  also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the

14  administrative findings, or if there is conflicting evidence supporting a finding of either disability

15  or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,

16  1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in

17  weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

18  ANALYSIS

19        As a preliminary matter, the relevant time period in this case is a fifteen-month span

20  between February 2014 (the alleged onset date) and June 2015 (the date last insured). Thus, the

21  court will focus on evidence probative of plaintiff's condition and functional capacities during

22  that period.

23        A.  Past Relevant Work

24        The ALJ found plaintiff capable of performing his past relevant work as a microcomputer

25  support specialist, a job he ceased doing in 2004 because the company he worked for closed.  AT

26  479.  Plaintiff had certified training in this field, and his job consisted of repairing the floppy disc

27  drive on desktop computers.  AT 482-485.  At the 2019 hearing, the vocational expert (VE)

28  classified this job as medium work and testified that someone with plaintiff's determined RFC

4

1  could perform it.  AT 434, 485, 487.  However, the VE added, from a practical standpoint,

2  plaintiff's computer repair skills were "outdated, technology-wise" by February 2014.  AT 487.

3  Plaintiff claims that the ALJ made multiple errors in finding that plaintiff could perform

4  past relevant work, including "fail[ing] to address changes in the computer industry" that made

5  plaintiff's computer skills outdated.  ECF No. 15-at 14-15.  However, because the ALJ made

6  alternative findings that plaintiff could perform other available jobs as well, any errors in the past

7  relevant work analysis are not material to the disability determination and are harmless.

8  B.  Mental Limitations

9  The ALJ found plaintiff able to perform medium work, with some physical limitations,

10  during the relevant period.  Plaintiff argues that it should have included mental limitations due to

11  his diagnosed depression.

12  Social Security Ruling 96-8p sets forth the policy interpretation of the Commissioner for

13  assessing residual functional capacity.  SSR 96-8p.  Residual functional capacity is what a person

14  "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003);

15  see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity

16  reflects current "physical and mental capabilities").  RFC is assessed based on the relevant

17  evidence in the case record, including the medical history, medical source statements, and

18  subjective descriptions and observations made by the claimant, family, neighbors, friends, or

19  other persons.  20 C.F.R. §§ 404.1545(a)(1), 404.1545(a)(3).  When assessing RFC, the ALJ must

20  consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of

21  work[.]" 20 C.F.R. §§ 404.1545(a)(4).

22  At the first hearing on his claim, in July 2016, plaintiff testified to back, neck, and foot

23  problems, but did not mention depression or any mental limitations.  AT 33-52.  The hearing took

24  place approximately one year after the relevant period, which ended in June 2015.

25  At the second hearing, in September 2019, plaintiff (whose English is limited) testified:

26  "In the last two years I have depression and my doctor recognize that.  So, he referred me to see a

27  counselor for treatment."  AT 478.  In his brief, plaintiff states that he was referred to counseling

28  in 2017 and was subsequently diagnosed with major depressive disorder, recurrent, moderate.

5

ECF No. 15 at 18.  However, plaintiff points to no treatment notes, diagnosis, or other mention of depression in the medical record during the fifteen-month period at issue.  The ALJ's summary of the medical evidence concerns only physical problems before and during the years 2014 and 2015.  AT 431.

As to depression, the ALJ wrote:

> Additionally, the claimant testified [in 2019] that in the last two years, he has had depression, and his doctor referred him to mental health treatment.  Medical records reflect the claimant was diagnosed with major depressive disorder in 2019.  However, there are no objective findings that would support a diagnosis of major depressive disorder prior to the claimant's date last insured.

AT 431 (record citations omitted).

Plaintiff argues that "it is reasonable to assume" that plaintiff's depression began years earlier when he lost his job.  ECF No. 15 at 18.  Alternatively, plaintiff argues that "it is reasonable to assume" that plaintiff's depression was a response to chronic pain during the period at issue.  Id. at 17.  However, in the absence of objective findings of mental impairment, and in light of plaintiff's not mentioning depression at his 2016 disability hearing, plaintiff's speculation about debilitating mental symptoms years earlier is not persuasive, and he has not shown error on this basis.

C.  Medical Opinions

Plaintiff next claims that the ALJ did not "resolve the conflict between Mr. Lao's treating physicians' records and the non-examining opinions."  AT 15 at 20.

The ALJ gave "great weight" to the opinions of State agency medical consultants Dr. Amon (in November 2014) and Dr. DeSouza (in February 2015), who opined that plaintiff "could lift and carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday," among other physical limitations.  AT 434.  The ALJ found these assessments "consistent with the objective physical exam findings and x-ray imaging prior to the claimant's date last insured."  AT 434; see id. (concluding that objective findings and imaging from September and November 2014 "support

1   a limitation to medium work").

2       Plaintiff argues that the ALJ did not resolve the differences between these doctors'

3   opinions and treatment notes from Dr. Moua in January 2018.  See AT 700, 702.  Plaintiff also

4   points out that, in May 2019, Dr. Moau noted that plaintiff could only sit/stand for 30 minutes and

5   could not lift more than 20 pounds without back pain.  See AT 726.  However, plaintiff's physical

6   limitations years after the relevant period are not especially probative of his condition in 2014-

7   2015, and plaintiff has not shown harmful error on this basis.

8       In his next claim, plaintiff asserts that the ALJ erred by discounting the June 2019 opinion

9   of medical provider Lue Yang, a physician's assistant, who opined that plaintiff could lift and

10  carry 20 to 25 pounds, and that he must be allowed to alternate between sitting and

11  standing/walking.  AT 434, citing AT 934-936.  The ALJ first found that Yang was "not an

12  acceptable medical source as defined in 20 CFR 404.1502(a)[.]"  AT 434.  The ALJ continued:

13
14
15
16
> Considering the lack of objective findings to support this opinion, the
> fact that this opinion is not consistent with the limited physical exam
> findings and x-ray imaging findings, the undersigned gives this
> opinion little weight.  Moreover, the opinion is dated June 3, 2019
> and does not specifically state that it is addressing the claimant's
> functioning within the relevant period and not only as of the date of
> the opinion.

17  AT 434.

18      Because plaintiff filed his disability application in 2014, the old rules governing the

19  evaluation of medical opinions apply here.[3]  Under the applicable regulations, a physician's

20  assistant is not an "acceptable medical source."  20 C.F.R. § 404.1502(a) (defining acceptable

21  medical sources, including licensed medical and osteopathic doctors), § 404.1527(a)(1) (defining

22  medical opinions as "statements from acceptable medical sources").  Plaintiff concedes that the

23  case "lies in a grey zone" but argues that Yang's evaluation was "from a medical team composed

24  of two physicians and a PA."  ECF No. 15 at 21, n.4.

25      Even crediting this argument *arguendo*, the ALJ supplied other valid reasons for

26

27  [3] For disability applications filed on or after March 27, 2017, the Commissioner revised the rules
    for the evaluation of medical evidence at the administrative level.  See Revisions to Rules
28  Regarding the Evaluation of Medical Evidence, 82 Fed. Reg 5844-01 (Jan. 18, 2017).

discounting Yang's opinion, including a lack of supporting objective findings, inconsistency with examination and x-ray findings[4], and the fact that it was issued four years after relevant period and gave no sign of applying to that period.  Plaintiff has not shown harmful error on this basis.

D. Credibility

Plaintiff asserts that the ALJ erred by discounting his subjective symptom testimony, specifically about the use of crutches.  In the credibility analysis, the ALJ found plaintiff's testimony about his need for crutches at the 2016 and 2019 hearings "contradictory."  AT 433.  Plaintiff contends that, given his "difficulty because of the translation [into English] and his loss of hearing," his 2019 statement about when he started using crutches should be disregarded.  ECF No. 15 at 26.

The ALJ summarized plaintiff's testimony from the 2016 and 2019 hearings and other symptom allegations from the record, as follows:

> The claimant alleged lower back problems limited his ability to work. In written statements, he stated he is still able to care for his personal needs, but needs a little extra help getting up from a seated position.[5] He is not as active as he used to be and stays inside his house more. In 2016 testimony, the claimant stated he stopped working because of his back pain.  His back pain limits his ability to sit more than one hour and thirty minutes.  He uses crutches almost every day to walk. His back pain limits his ability to drive.  His sons help him around the house.  He is able to dress and bathe himself.  He testified that he had been using crutches about one year.[6]  In his 2019 hearing, the claimant stated he has pain when he walks and stands for more than 15 minutes.  Due to both his back and gout, he uses crutches to walk, which he bought in 2014.[7]

AT 433 (emphasis added).

---

[4] See AT 431 (noting that "2014 and 2015 treatment notes do not reflect complaints of joint pain in . . . other joints beside the right ankle" and that "the only objective finding is tenderness in the right ankle and x-rays are normal with no gait abnormalities or use of assistive devices documented in treatment notes"), 434 (noting that 2014 examination notes and lumbar spine x-rays, showing tender and tight lower back muscles and slight narrowing of the discs, supported a limitation to medium work).

[5] Record citation omitted.

[6] Citing AT 33-52 (July 14, 2016 hearing testimony).

[7] Citing AT 467-491 (September 9, 2019 hearing testimony).

1       The ALJ found that plaintiff's "statements concerning the intensity, persistence, and

2  limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other

3  evidence in the record[.]"  AT 433.  The ALJ explained his credibility finding, writing in part:

> Although the claimant claimed he was unable to place any weight on
> his right foot and could only stand for 10-15 minutes, in June 2014,
> he told his medical provider that he could stand up to two hours and
> lift up to 30-40 pounds.  Additionally, while the claimant testified in
> July 2017 [sic] that he had been using crutches for about a year, in
> 2019, he testified that he had purchased them in 2014 and used them
> since then.  The claimant's testimony is contradictory, and testimony
> closer to the date last insured does not definitively establish the use
> of crutches prior to the date last insured.  Moreover, treatment notes
> in 2014 and 2015 do not note the use of crutches.  January 2015 and
> February 2015 treatment notes do not mention the use of crutches or
> note gait abnormalities.  The claimant stated he needed extra help
> getting up from a seated position; however, treatment notes do not
> document difficulty rising from a seated position or use of an
> assistive device.
>
> . . .
>
> Considering treatment notes prior to the date last insured do not
> document weakness, sensory loss, gait abnormalities, or use of an
> assistive device, additional limitations [beyond the determined RFC]
> are not warranted.

AT 433-34 (emphasis added; record citations omitted).

       The ALJ determines whether a disability applicant is credible, and the court defers to the

ALJ's discretion if the ALJ used the proper process and provided proper reasons.  See, e.g.,

Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an

explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990).  "Without

affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for

rejecting the claimant's testimony must be clear and convincing."  Morgan v. Commissioner of

Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); see also Lambert v. Saul, 980 F.3d 1266,

1277–78 (9th Cir. 2020).

       In evaluating whether subjective complaints are credible, the ALJ should first consider

objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947 F.2d 341,

344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ

then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  When discounting subjective testimony, an ALJ must provide "specific, clear, and convincing *reasons* for doing so."  Wade v. Saul, 850 F. App'x 568, 569 (9th Cir. 2021) (emphasis in original), citing Lambert v. Saul, 980 F.3d 1266, 1277–78 (9th Cir. 2020).  This standard does "not require ALJs to perform a line-by-line exegesis of the claimant's testimony[.]"  Lambert, 980 F.3d at 1277.  However, an ALJ's detailed overview of the claimant's medical history—coupled with a nonspecific boilerplate conclusion that her testimony is "not entirely consistent" with her medical treatment—is not enough to satisfy the minimal requirements for assessing credibility.  Id. at 1277–78.

Here, plaintiff argues that his 2019 testimony about crutches should be disregarded, nullifying the ALJ's observation that plaintiff's 2014 and 2019 testimony about crutches was "contradictory."  ECF No. 15 at 26.  Plaintiff next points to a note in a 2014 disability report stating that he did yardwork and occasionally used a crutch.  AT 56.  The ALJ may have overlooked this note in the record; however, it "does not definitively establish the use of crutches prior to the date last insured" or change the fact that "treatment notes in 2014 and 2015 do not note the use of crutches."  See AT 433 (emphasis added).

Assuming plaintiff misspoke about his use of crutches in 2019 due to language and/or hearing issues, the rest of the ALJ's credibility analysis must be considered.  First, the ALJ reviewed the objective medical evidence, including December 2013 exam findings that plaintiff had "a normal gait, no limitation in range of motion or pain with range of motion, and was able to bear weight without any pain."  AT 431, citing AT 273.  The ALJ further noted that "[p]hysical examinations showed tenderness in the right ankle but no erythema, ecchymosis, swelling, deformity, or nodules."  AT 431 (record citations omitted).  The ALJ noted that plaintiff was

1    diagnosed with gout in December 2013 and prescribed medication; however, the "2014 and 2015

2    treatment notes do not reflect complaints of joint pain in the big toe or other joints besides the

3    right ankle," and plaintiff's gout medication was not changed or increased during that period.  AT

4    431.  The ALJ concluded that, "considering the only objective finding is tenderness in the right

5    ankle[,] and x-rays are normal with <u>no gait abnormalities</u> <u>or use of assistive devices documented</u>

6    <u>in treatment notes</u>," plaintiff's gout was not a severe impairment, nor did the evidence "establish a

7    medically determinable impairment for claimant's right ankle or foot."  AT 431 (emphasis

8    added).  The lack of objective findings was a proper factor to consider in assessing plaintiff's

9    statements about his disabling physical limitations.  See Stubbs-Danielson v. Astrue, 539 F.3d

10   1169, 1175 (9th Cir. 2008) (upholding ALJ's credibility finding where the "claimant's allegations

11   as to the intensity, persistence and limiting effects of her symptoms are disproportionate and not

12   supported by the objective medical findings nor any other corroborating evidence").  Because the

13   ALJ used the proper process and provided proper reasons, the undersigned defers to his

14   evaluation of the subjective testimony.

15           E.  Medical Vocational Guidelines

16           Lastly, plaintiff claims that the ALJ used the wrong age when applying the Medical

17   Vocational Guidelines to determine whether he was disabled.  The ALJ considered that plaintiff

18   was 56 years old on the date last insured.  AT 435.  Plaintiff points out that, on the date of the

19   ALJ's decision, plaintiff was 61 years old, falling into the "approaching retirement" category, and

20   contends that this makes the ALJ's disability finding erroneous.  ECF No. 15 at 27.

21           However, the relevant period for the ALJ's decision ended on June 30, 2015, the date last

22   insured.  To receive Title II benefits, plaintiff was required to show that he met the definition of

23   disabled prior to that date, not the date of the ALJ's decision.  See 20 C.F.R. § 404.131(b)

24   (requiring insured status for DIB).  Plaintiff has not shown error on this basis.[8]

25   ////

26

27   ───────────────────

     [8] Plaintiff additionally argues that the RFC did not include all of his mental and physical
28   limitations, but this simply restates the claims addressed above.

1   CONCLUSION

2        For the reasons stated herein, IT IS HEREBY ORDERED that:

3        1.  Plaintiff's motion for summary judgment (ECF No. 15) is denied;

4        2.  The Commissioner's cross-motion for summary judgment (ECF No. 19) is granted;

5   and

6        3.  Judgment is entered for the Commissioner.

7   Dated:  March 26, 2024

8                                                      CAROLYN K. DELANEY
                                                       UNITED STATES MAGISTRATE JUDGE
9

10

11

12

13   2/lao2017.dib.ckd

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28